IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARMELITA MALDONADO,

        Plaintiff,

vs.                                                                                                CIV 13-0242 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing filed August 12, 2013 (*Doc. 18*), which was fully briefed on October 29, 2013 (*Doc. 21*). The memoranda of the parties and administrative record[1] have been thoroughly reviewed and given due consideration. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 4, 9*.

**I. Background**

Plaintiff is currently 44-years old, single, with two children. *AR* 206, 207, 150, 233. She has been diagnosed with a specific phobia (inclement weather and crowds), generalized anxiety, and chronic ankle pain. *AR* 230, 231, 369. Plaintiff filed for benefits with the Social Security Administration in October of 2009 alleging a disability beginning on August 1, 2009. *AR* 23, 126-135. The Administration denied benefits at

---

[1] Documents 15-1 through 15-16 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

the initial and reconsideration stages, and Plaintiff requested a hearing before an administrative law judge ("ALJ").

At the hearing, the ALJ found that while Plaintiff had severe impairments, including "affective disorder, anxiety disorder and disorders of the ankle and neck," she was able to perform sedentary work with "only occasional interaction with the public, co-workers and is not suited to performing tandem tasks or working as part of a team." *AR* 27. As the vocational expert ("VE") testified that there were jobs that Plaintiff could perform in significant numbers, the ALJ determined that Plaintiff was not disabled. *AR* 32-33. The Appeals Council declined Plaintiff's request for review making the ALJ's decision the final decision of Commissioner, which Plaintiff now appeals to this Court.

## II.  The Claims

Plaintiff asserts that the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC") by failing to analyze her ability to interact with supervisors. Plaintiff additionally maintains that the ALJ erred by failing to properly analyze her treating source opinions. Because the Court finds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied, Plaintiff's motion will be denied.

## III. Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is

> not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal brackets and quotations omitted).

The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.*, (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). This Court may not reweigh the evidence nor substitute its opinion for that of the Commissioner. *Id.* at 1214.

## IV. Discussion

Plaintiff first asserts that in his assessment of her RFC at Step Four, the ALJ failed to analyze her ability to respond to supervisors.[2] Plaintiff argues that 20 C.F.R. §§404.1545(c) and 416.945(c) require this specific analysis. However, Plaintiff also concedes that the ALJ is not required to make a specific analysis as to supervisors in every case. *Doc. 18* at 4 (citing as an example, *Cuellar v. Colvin*, CIV 12-1149 LFG (Memorandum Opinion and Order (*Doc. 24*) filed 7/12/13). In the instant case, it was

---

[2] Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 D.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

not necessary for the ALJ to specifically analyze Plaintiff's ability to respond to supervisors.

> 20 C.F.R. §§ 404.1545(c) and 416.945(c) both state:
>
> (c) Mental abilities. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, ***and in responding appropriately to supervision, coworkers, and work pressures in a work setting***, may reduce your ability to do past work and other work.

*Id.* (emphasis added). In assessing residual functional capacity, "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *SSR 96-8P*, 1996 WL 374184 at *1.

Plaintiff argues that while the ALJ found that Plaintiff can perform sedentary work but "may have only occasional interaction with the public, co-workers and is not suited to performing tandem tasks or working as part of a team," *AR* 27, he should have specifically discussed her ability to interact with supervisors. *Doc. 18* at 3-5. This particular analysis is unnecessary, however, because there is no information in the record that Plaintiff has any issues interacting with supervisors.

When asked how well she gets along with authority figures, specifically including bosses, Plaintiff reported, "I get along with them just fine." AR 156. Similarly, Plaintiff's mother's opinion was that Plaintiff "does well" with such authority figures. AR 164. There is no evidence in the record that Plaintiff has any fear or anxiety specifically related to interacting with supervisors. Accordingly, the ALJ had no reason to consider

whether Plaintiff had a limitation or restriction with respect to her interactions with supervisors, and it was not error for the ALJ to omit this analysis.

Plaintiff next contends that the ALJ failed to properly analyze the treating source opinions of Gail Bell, LPCC, LADAC,[3] and Robert Kellogg, M.D., under the treating physician rule and SSR 06-3P. *Doc. 18* at 5-10. Under the treating physician rule, "the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d) (2)). In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ considers whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d) (2) and *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003)). If so, the medical source opinion is given controlling weight. *Id*. If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id*. The determination in the evaluating "acceptable medical sources" in the second step is guided by the following relevant factors:

(1) The length of the treatment relationship and the frequency of examination;

(2) The nature and extent of the treatment relationship, including the

---

[3] As an LPCC (Licensed Professional Clinical Counselor) and LADAC (Licensed Alcohol and Drug Abuse Counselor), Ms. Bell is not considered an "acceptable medical source" under 20 C.F.R. §404.1513(a) and 416.913(a). However, opinions from "medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *SSR 06-3P*, 2006 WL 2329939 at *3.

>   treatment provided and the kind of examination or testing performed;
>
>   (3) The degree to which the physician's opinion is supported by relevant evidence;
>
>   (4) Consistency between the opinion and the record as a whole;
>
>   (5) Whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
>   (6) Other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Pisciotta*, 500 F.3d at 1077-78 (citing 20 C.F.R. §§ 404.1527 and 416.927 and quoting *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted in original)).  Similarly, in accordance with SSR 06-03P, factors in evaluating medical sources who are not "acceptable medical sources" include:

>   (1) How consistent the opinion is with other evidence;
>
>   (2) The degree to which the source presents relevant evidence to support an opinion;
>
>   (3) How well the source explains the opinion;
>
>   (4) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
>
>   (5) Any other factors that tend to support or refute the opinion.

While an ALJ must consider these factors, he need not expressly discuss each of them in his opinion.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-3P at *5 ("Not every factor for weighing opinion evidence will apply in every case."). The ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F3d at 1300)) (internal quotations omitted).

In this case, the ALJ did not give Ms. Bell's or Dr. Kellogg's opinions controlling weight. Plaintiff argues that the ALJ cannot reject the treating physician's assessment on the basis of credibility judgments, *Doc. 18* at 9-10; however, the ALJ did not reject the medical source opinions outright. Instead, he gave the opinions "little weight." AR 31.

The ALJ explained that "claimant's activities belie her claims that she is housebound." *Id.* He further describes in great detail why he found "claimant's reporting to be unreliable on fundamental issues." *Id.* For example, the ALJ noted that Plaintiff maintains her responsibilities as the sole provider for her family, drives her children to and from school, shops for household necessities, and was inconsistent with regard to whether she could leave the house only in the absence of inclement weather or at all. *Id.* Further, the ALJ found it incredible that family members would use Plaintiff as their child care provider knowing she might be unable to leave the house in case of an emergency. *Id.*

The ALJ additionally recounts that Plaintiff was not compliant with treatment recommendations. AR 30 – 31. For example, Plaintiff failed to take her prescribed anxiety medication and was absent from therapy for five months. *Id.* at 31. While the diagnosis of agoraphobia might account for her failure to attend therapy sessions, the ALJ found that "in light of the fact that claimant takes her children to school, shops and otherwise maintains her responsibilities as the sole provider for her family, I cannot credit agoraphobia as the basis for her non-compliance." *Id.* The ALJ also concluded that Plaintiff's financial difficulties "provide a high degree of incentive to tell less than the truth." AR 31.

This accounting makes the weight the ALJ gave to treating source's medical opinions and the reasons for that weight quite clear.  Accordingly, this Court cannot say that the ALJ failed to apply the proper legal standards to his evaluations of the medical source opinions.  Indeed, his decision to afford them little weight is supported by substantial evidence.

Plaintiff criticizes the ALJ for giving Plaintiff's medical providers' opinions little weight based on his assessment that Plaintiff's reporting to them was "unreliable."  She argues that that the ALJ should have "given Ms. Maldonado an opportunity at the hearing to clarify her statements before he relied on them to find her not credible."  *Doc. 18* at 6.  This argument is without merit.  First, as Defendant points out, while the ALJ has the duty to develop the record, he does not have the duty to be an advocate for Plaintiff.  *Henrie v. U.S. Dept. of Health & Human Serv.*, 13 F.3d 359, 361 (10th Cir. 1993).  Plaintiff's counsel had the opportunity to make any clarifications deemed necessary at the hearing.  Second, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).  In this case, the ALJ's credibility findings "are closely and affirmatively linked to substantial evidence" as demonstrated in the discussion above.  *Id.*  As the Court in *Hackett* explained, "Plaintiff's argument to the contrary constitutes an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline."  *Id.*

Finally, Plaintiff contends that it was inconsistent for the ALJ to discount the opinions of Plaintiff's health care providers based on her subjective reports while at the

same time giving weight to the report of the non-treating medical opinion of Dr. Anne Ortiz, M.D., which Plaintiff claims was also based on subjective reports. *Doc. 18* at 7; *Doc. 20* at 3. The conflict that seems so plain to Plaintiff is not so clear to the Court. The ALJ explained that the "Agency Doctors deemed [Plaintiff's] psychological conditions 'non-severe,'" but he rejected that position in favor of the limitations he ascribes to Plaintiff (only occasional interaction with the public and co-workers, not suited for performing tandem tasks or working as a part of a team), which he attributes to "fairly consistent reporting in the record about claimant's anxiety around others." AR 32. It appears that while the ALJ found that Plaintiff was consistent with her reports of anxiety around others, she was not consistent with her reports of being homebound. Consequently, the ALJ did not error in his evaluation of the medical source opinions.

## V. Conclusion

Since the ALJ was not required to discuss Plaintiff's ability to interact with supervisors and properly analyzed the treating source opinions, his decision was supported by substantial evidence the correct legal standards were applied.

**WHEREFORE**, Plaintiff's Motion to Reverse and Remand for Rehearing (*Doc. 18*) is denied, the decision of the Commissioner is affirmed, and this action will be dismissed.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE